24 C.C.P.A.(Patents)

### In re COOPER.
### No. 3724.

Court of Customs and Patent Appeals.
Jan. 25, 1937.

Charles H. Potter, of Washington, D. C., and Eugene L. Greenewald, of New York City (Donald C. Harrison, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

All claims, numbered 1, 2, 4, 5, 6, and 8, were rejected in appellant's application to the United States Patent Office for a patent relating to clean-up agents used in producing high vacua in radio tubes and the like. The claims were rejected by the Examiner upon two references—the patent to Cooper, 1,800,134 of April 7, 1931, and the British patent to Fuller, 300,265 of January 22, 1930.

Upon appeal, the Board of Appeals affirmed the action of the Examiner for substantially the same reasons as those as-signed by the Examiner. From the decision of the Board, this appeal was taken.

The claims are all article claims and are drawn to cover the alleged invention which appellant, in his brief, describes as follows:

"The invention in issue is a metallic composition or alloy which is used as a clean-up agent or 'getter' to increase the degree of vacuum in evacuated vessels of various kinds, of which radio tubes are a familiar example. The alloy is used in the form of a compressed tablet of powdered material, and in use it is vaporized within a partially evacuated vessel to increase further the degree of vacuum. The vaporized getter material combines with the residual gases and condenses on the walls of the vessel. The alloy itself consists of two components: magnesium and strontium, the strontium forming about 35% to about 50% of the alloy."

Claim 6 is illustrative of all the claims on appeal. It reads:

"6. Clean-up agents suitable for use in producing high vacua, comprising a compressed tablet of comminuted binary alloy of magnesium and strontium, the strontium forming from about 35% to about 50% of the alloy."

The reference Cooper is a patent issued to the applicant more than two years prior to the filing of the application in the instant case. It relates to producing high vacua, and discloses a clean-up agent in pellet form, composed of magnesium and either barium or strontium. It particularly describes "alloys of barium with magnesium." We find in the patent the following:

"* * * Magnesium is the usual clean-up agent, but other substances, for example the metals barium and strontium, give higher vacuums under certain conditions. * * *

"An object of the invention is to facilitate the flashing of such agents as barium and strontium, and to adapt them to the equipment and schedules now employed with magnesium. This is accomplished by alloying the barium or strontium with magnesium in such proportions as to produce stable alloys containing effective quantities of the former metals, powdering the resulting brittle alloys and compressing the powders which are self-bonding, into pellets of the desired size."

After having suggested, as is above set out, that strontium may be substituted for barium, the patentee, in his specification, further states:

"Magnesium and barium alloy in all proportions, and certain of the alloys have been found to be relatively stable in the air. It will be recognized that it is impossible to differentiate sharply between compositions which are stable in air and those which are not, especially since the action of the air varies with its humidity, but it may be stated that stability falls off with increasing barium content, and that alloys containing up to about 30% of barium are fairly stable in air. Alloys which are unstable in air are also useful, but they must be protected from prolonged exposure to air. As little as 10% of magnesium alloyed with barium will substantially lower the energy requirements for flashing the getter, while as little as 5% of barium increases the thoroughness of the clean-up. * * *"

The British patent was cited because it shows the use of an alloy containing approximately 50 per centum strontium and 50 per centum aluminum. It will be noted that aluminum is suggested instead of magnesium. The patentee comments on the suitability of aluminum and refers to its harmless volatility. The British patent also comments on the use of barium with aluminum and speaks of strontium and barium being "of the alkaline earth metals."

The Board, in affirming the decision of the Examiner, stated appellant's contention and its own conclusions in the following language:

"Appellant states that it is well known that strontium is not as stable in air as barium and therefore that those skilled in the art would not expect the percentage of strontium to exceed that of barium, or, indeed, that so large a percentage would be possible. It is appellant's view, therefore, that he produced an unexpected result when he found that the percentage of strontium could be increased up to 50%.

"We believe that there is considerable force in appellant's argument but it has long been recognized that it is impossible to predict what the character of a product may be when one chemical is substituted for another in a combination and while it may be true that those skilled in the art would not expect that a greater proportion of strontium than barium could be employed in the Cooper alloy, we are of the opinion that Cooper, or others entitled to practice the disclosure of that patent, should be at liberty to experiment with strontium and ascertain the largest proportion that can be employed. We think that it is obvious that the largest proportion of strontium which would remain stable in air would have been regarded as desirable by those skilled in the art. It is our opinion, therefore, that appellant is not entitled to a patent monopoly on experimenting with the Cooper disclosure and ascertaining that a greater proportion of strontium could be employed than was perhaps to be inferred from the disclosure of that patent."

The Examiner went somewhat more into detail than the Board with reference to the percentage of strontium and said:

" * * * Inasmuch as the patent is directed to alloys of either barium or strontium with magnesium these two must be considered as equivalents and they are so disclosed. The disclosure is silent as to particular percentages of strontium but that given for barium must be considered illustrative for those of strontium as well, and applicant admits (page 1 of remarks of Sept. 4, 1934) that they are equivalents up to 30%. However, these figures are merely illustrative and not limiting as much depends on the standards of suitability. The patentee definitely states that the proportion of strontium should be such as to produce a stable alloy. Nowhere is it stated that 30% is the upper limit. It would seem from this that the natural and obvious thing to do would be to experiment and find what proportion of strontium to use which, of course, would depend on the tolerance of absorption. This amounts to nothing more than skill in the art. It is noted that the stability of the strontium-magnesium alloy decreases with increasing strontium content as does that of the barium alloy with the increase of barium as shown by table B on page 5 of the application. The alloy of the application is different from that of the patent, even assuming that the maximum strontium content is there set as 30% which it is not, only in degree of stability and not in kind. This is further shown by the disclosure in the present application wherein it is stated that a suitable alloy of strontium with magnesium may have a strontium content of from 5 to 50%.

"Applicant argues that inasmuch as pure strontium is less stable in air than

pure barium that the discovery that strontium-magnesium alloys are more stable in air than barium magnesium alloys having the same magnesium content, amounts to an unexpected, unpredictable striking and useful result, thereby constituting invention. With this the examiner cannot agree. The Cooper patent says nothing of the relative stability of the respective alloys but the recognition that one is more active than the other even though this would not be ordinarily expected would not amount to invention.

"The claims have also been rejected on British patent 300,265. There would be no invention in using magnesium in the air stable alloy of the British patent in place of aluminum."

It will be noticed that the Examiner held that there would be no invention in using magnesium in the air stable alloy of the British patent in place of aluminum. The Board did not comment upon this ground of rejection but did not affirmatively disapprove of the same. Under our view of the case, it is unnecessary to consider this ground of rejection.

We are in harmony, however, with the decision of the Board in affirming the Examiner's rejection of the claims for the reasons which it assigns. We are of the opinion that the appealed claims define nothing inventive over that which was disclosed in the Cooper patent, and that what the applicant has done here, for which he claims additional reward, lies within the realm of those skilled in the art rather than in the inventive field.

The decision of the Board of Appeals is affirmed.